WILLIAM H. CORBIN, RECEIVER, v. JOHN C. DE LA VERGNE.

If a receiver loan trust funds without legal authority, and take a promissory note for security, the want of such legal authority is not a good defence in an action on the note, brought by a subsequently-appointed receiver, who holds it as part of the assets of the trust estate.

On rule to show cause certified from the Hudson Circuit Court.

By an order of the Chancellor, dated January 20th, 1875, Michael Sandford was appointed receiver of the Union Bank of Jersey City, an insolvent corporation. A subsequent order was made January 10th, 1881, removing Sandford from office, as receiver, and appointing the plaintiff, William H. Corbin, in his stead. The plaintiff received, as part of the assets of the bank, a promissory note dated May 15th, 1875, signed by J. C. De La Vergne, maker, for $1200, payable sixty days after date to the order of James Gopsill, and endorsed by him, "protest waived." On this note the present action was brought; it was tried without jury, and the finding was for the plaintiff, $1661.31 damages.

When the note was made, May 15th, 1878, Sandford and Gopsill signed and delivered to the defendant an agreement in writing, reciting that it was made at their request for their accommodation, and promising to take up and pay the note at maturity and hold him, the defendant, harmless from all costs, liabilities and expenses growing out of the same.

Argued at November Term, 1881, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, REED and MAGIE.

For the plaintiff, *G. Collins*

For the defendant, *W. Brinkerhoff.*

The opinion of the court was delivered by

SCUDDER, J. It is evident that the note in controversy was made by the defendant for the accommodation of Sandford and Gopsill, or one of them, for the purpose of borrowing money by loan, discount or otherwise. It was signed by the defendant as maker, on the credit of the persons who obtained his signature, upon the security of the guaranty which they gave him at the time, that they would pay it at maturity and save him harmless. The note was used for the purpose intended by the parties, for on the same date it bears, there is found on the receiver's cash-book a debit entry, "Hud. Co.

Nat. Bank Rec. Acc't. W. A. Dixon, cash for drawer, $1200," (Dixon was the receiver's clerk); and a credit entry in loan account, "De La Vergne, $1200." These entries and the evidence show that $1200 of money in the receiver's hands were drawn out and this note substituted therefor. It was endorsed by Gopsill alone, although it appears by the guaranty given to the maker and by other testimony, that Sandford, the receiver, was interested in the loan, and probably had the entire proceeds. If this were so, he would hardly wish his name to appear on the note and in the account as the person who actually received the benefit of the loan from funds held in trust by him as receiver. The defendant does not complain that he was deceived or injured by the use made of the note which was delivered by him to Gopsill and Sandford, to be used for the accommodation of one or both of them. The defence is that Sandford had no legal right to make the loan and take the note as security for the return of the funds borrowed. This question can only be raised by the court that appointed the receiver, and for the benefit of those who are interested in the funds that were held by the receiver who made the loan. If there were an illegal lending of the money, the defendant can be in no way injured thereby, for there was no fraud or deception used to induce him to sign the note, nor has it been diverted from the purpose of accommodation for which it was made by him. The note was transferred to and accepted by the present receiver, and reported to the court by Sandford, as a voucher and security for the money received on the credit of the drawer, and to make good the debit in the cash account. The amount of the note must therefore be paid by the maker unless it appears that it has been satisfied in some other way.

Mr. Sandford says that the note should have been charged to him on account of his compensation, but it does not appear that any allowance was made to him for compensation for his services as receiver until April 9th, 1877, when an order was made by the Chancellor fixing the amount, and nothing is shown to have been due him as former president of the bank

at the time of the maturity of the note; there were, there-
fore, no funds to his credit against which the charge could be
made. If it was his purpose to charge the note against him-
self, and pay it, there is no proof that it was ever done, but,
on the contrary, the charge was open and unsettled when the
books, papers and assets of the bank were transferred by him
to his successor in office. It is not even shown that at the
maturity of the note, or at any time afterwards, prior to this
transfer, he had money due to him in this account that
could have been applied to the payment of this note. What-
ever may have been his purpose, there is no evidence that such
purpose was effected and the note paid.

The rule to show cause should be discharged, with costs,
and the Circuit Court is so advised.